IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MANASSAS TRAVEL, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>WORLDSPAN, L.P., ET AL,<br><br>      Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br><br>Case No. 2:07-CV-701-TC |

   In this diversity action, Manassas Travel, Inc. ("Manassas") has sued Worldspan, LP ("Worldspan") and Stewart Hall, an account representative of Worldspan, alleging breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with contract, intentional and negligent interference with business relationships, and civil conspiracy. Manassas provides travel services to government agencies and private corporations.[1] Worldspan offers a computerized reservations service ("CRS"), also called a global distribution system ("GDS"). After the business relationship between Manassas and Worldwide soured, Manassas brought this action.

---

[1] All factual statements in this order are taken from the complaint. Because the agreements between Manassas and Worldwide are at the center of this lawsuit and are referred to several times in the complaint, the court has also, when necessary, considered the agreements themselves. But the court has not considered other supplemental materials submitted by the parties and, therefore, does not treat this motion as one for summary judgment.

Worldspan has filed a motion to dismiss[2], raising various arguments in support of their motion, chief among them that the Airline Deregulation Act ("ADA") preempts all Manassas claims. As discussed below, the court grants Worldspan's motion on all claims except the two contract claims (claims one and four).

**BACKGROUND**

In 2001, a travel agency called N&N Travel and Tours ("N&N") won the bid to become the prime contractor on a large contract with the United States Air Force Education Training Command ("AETC Contract"). Manassas was one of six travel agencies acting as subcontractors on the AETC Contract. All six travel agencies contracted with Worldspan to use Worldspan's GDS in connection with the AETC Contract.

In 2004, N&N assigned its own contract with Worldspan ("The N&N Worldspan Agreement") to Manassas. Manassas claims that although Worldspan knew that Manassas was now to receive all the payments that were earlier due N&N under the N&N Worldspan Contract, Worldspan did not make the payments to Manassas. Manassas alleges that in failing to make the required payments, Worldspan breached the N&N Worldspan Agreement, violated the covenant of good faith and fair dealing and is liable for tortious interference with the Agreement (claims one, two and three of the complaint).

In October 2004, Manassas and Worldspan entered into a second contract ("the New Manassas / Worldspan Agreement"). Manassas alleges that when Manassas sought payment from Worldspan for the payments due under the N&N Worldspan Agreement, Worldspan

---

[2] In total, Worldspan filed three separate motions in support of dismissing Manassas's claims including an initial motion to dismiss (dkt. # 4), a supplemental motion to dismiss (dkt. # 30), and a post-hearing supplemental brief per the direction of the court. (Dkt. # 61.)

wrongfully terminated, and thereby breached, the New Manassas / Worldspan Agreement. Manassas also claims violation of the covenant of good faith and fair dealing and tortious interference with the New Manassas / Worldspan Agreement (claims four, five and six of the complaint). Manassas further alleges that Defendant Stewart Hall, an account executive of Worldspan, disclosed confidential information about Manassas and its business to competitors of Manassas (claim seven). In claim eight, Manassas alleges that the actions of the Defendants were part of a conspiracy.

**ANALYSIS**

Standard of Review

When reviewing a motion to dismiss, the court assumes the truth of the well-pleaded factual allegations, viewing them in the light most favorable to the plaintiff. Ridge at Red Rock v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1995, 1969 (2007)).

Previously Dismissed Claims

In its opposition to Worldspan's motion to dismiss, Manassas acknowledged that its third and sixth claims for relief, alleging tortious interference with contract, should be dismissed for failure to state a claim. Then, at the hearing, Manassas's counsel acknowledged that Georgia law controlled the interpretation of the N&N Worldspan Agreement and the New Manassas / Worldspan Agreement. Counsel also acknowledged that the associated second and fifth claims (breach of the covenant of good faith and fair dealing) should be dismissed because Georgia law does not recognize breach of the covenant of good faith and fair dealing as a separate cause of

action. (Hr'g Tr. 8-10, Mar. 11, 2008); See also Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990). Also at the hearing, the court, relying on Leigh Furniture & Carpet Co. v. Isom, 657 P.2d 293 (Utah 1982), held that the claim for negligent interference with business relationships (claim seven) must be dismissed, although it reserved ruling on the claim of intentional interference pled in that claim. (Hr'g Tr. 10.)

At the close of the hearing, the court directed the parties to submit additional briefing on the issues of preemption under the ADA and the "improper means" element of the claim for intentional interference with business relationships. The court has carefully reviewed the briefs and now rules as follows.

ADA Preemption

The ADA prohibits States from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). Worldspan agreed that the breach of contract claims (claims one and four) are not preempted so long as they "stay within the four corners of the parties' contract . . . ." (Worldspan Supplemental Br. Supp. Mot. Dismiss 10 n.5.) But Worldspan contends that to the extent Manassas is seeking extra-contract relief, such as attorneys' fees, exemplary damages and interest, the ADA preempts such relief. American Airlines v. Wolens, 513 U.S. 219 (1995), supports Worldspan's argument. There the Court held that the ADA did not preempt a straightforward breach of contract claim: "A remedy confined to the contract's terms simply holds parties to their agreements . . . ." Id. at 229. But the Court made clear that any relief that went beyond "the parties' bargain" and was "based on state laws or policies external to the agreement" was preempted. Id. at 233.

Other courts have held that in cases alleging breach of contract, claims for punitive damages are preempted by the ADA. See <u>Travel All Over the World, Inc. v. Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (holding that although breach of contract claim itself was not preempted, under <u>Wolens</u>, punitive damages, because they are based on state laws or policies external to the contract, were preempted); <u>Power Standards Lab. Inc. v. Fed. Express Corp.</u>, 127 Cal. App. 4th 1039, 1046-47 (Cal. Dist. Ct. App. 2005) (same). Of course, if Manassas's request for attorneys' fees and interest is based on the agreements themselves, the request would not be preempted. But the parties have not addressed that issue. Accordingly, the court dismisses only the claim for punitive damages, does not dismiss the contract claims themselves, and reserves ruling on the claims for attorneys' fees and interest.

Worldspan also contends that the two remaining claims, intentional interference with business relationships (claim seven) and civil conspiracy (claim eight), are preempted. But the court has decided that those claims must be dismissed on other grounds and therefore will not reach the issue of preemption of counts seven and eight.

<u>Intentional Interference With Economic Relations</u>

In <u>Leigh Furniture & Carpet Co. v. Isom</u>, 657 P.2d 293 (Utah 1982), the Utah Supreme Court established the elements for the tort of intentional interference with economic relations: (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) for an improper purpose or by improper means; (3) causing injury to the plaintiff. <u>Id.</u> at 304. The <u>Leigh</u> court made it clear that "improper purpose" is established by a showing that the defendant's primary purpose was to injure the plaintiff. <u>Id.</u> at 307. Manassas has not alleged that Defendants acted for an improper purpose. The alternative for satisfying factor two of the test is

to allege "improper means."

According to Manassas's allegations, Worldspan and Mr. Hall acted, not with the deliberate intent to injure Manassas, but to gain economic benefit.  Under Utah law, this is not sufficient to establish the "improper means" element of the tort of intentional interference with business relationships.

Manassas, at the hearing, argued that Worldspan had acted by improper means.[3] Manassas argues that the "improper means" element was met because Defendants breached their fiduciary duty.  Manassas contends that Defendants owed a fiduciary duty to Manassas, which they breached by disclosing confidential information.  But the Agreement itself does not have an express agreement creating a fiduciary relationship between the parties.  And Manassas did not, nor can it, argue that it alleged any facts indicating a fiduciary relationship between Worldspan and Manassas.

"A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another.  A fiduciary is a person with a duty to act primarily for the benefit of another . . . .  A fiduciary relationship implies a condition of superiority of one of the parties over the other.  Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary." First Sec. Bank of Utah v. Banberry Dev. Corp., 786 P.2d 1326, 1333 (Utah 1989).  "There is no invariable rule which determines the existence of a fiduciary relationship, but . . . there must exist a certain inequality, dependence, weakness of age,

of mental

---

[3] The court notes that breach of contract and breach of the implied covenant of good faith and fair dealing are not, under Utah Law, improper means.  The Leigh court stated, "A deliberate breach of contract, even where employed to secure economic advantage, is not, by itself, an 'improper means.'"  657 P.2d at 309.  Accordingly, Manassas may not rely on those acts to establish the tort.

strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other." Id.

Manassas argues that Worldspan stands in a superior position to Manassas. Manassas also states that it entrusted its important and sensitive information to Worldspan. But Manassas does not explain how those statements indicate a fiduciary relationship.

From the allegations, it appears that Manassas provided confidential information to Worldspan as part of an arm's length business transaction. Manassas does not allege any facts supporting its conclusion that Worldspan was placed in a position of peculiar confidence by Manassas or that Worldspan had a duty to "act primarily for the benefit of" Manassas. Moreover, Manassas does not explain or allege how Worldspan stands in a position superior to Manassas.

Accordingly, because Manassas has not alleged either improper purpose or improper means, the court dismisses Manassas's claim for intentional interference with business relations.

Civil Conspiracy

Manassas conceded at the hearing that the unlawful act required for a civil conspiracy was the same unlawful act necessary to prove "improper means" in claim seven. (Hr'g Tr. 22.) Manassas conceded that if claim seven failed, then so would claim eight. (Id.) Accordingly, the court holds that because "improper means" was not alleged in claim seven, claim eight must also be dismissed.

**ORDER**

For the reasons set forth above and at the March 11, 2008 hearing, Worldspan's motion to dismiss (dkt. nos. 4, 30, 61) is GRANTED IN PART and DENIED IN PART as follows:

1) Manassas's claims two, three, five, six, seven and eight are DISMISSED.

2) Although claims one and four remain, the claim for punitive damages is DISMISSED. The court reserves ruling on the claims for attorneys' fees and interest.[4]

SO ORDERED this 30th day of April, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

---

[4] At the hearing, Worldspan was given leave to file the amended counterclaim. (Hr'g Tr. 36) (granting Worldspan's Motion to Amend/Correct Counterclaim (dkt. no. 28)). Accordingly, Manassas's Motion to Dismiss Worldspan's Counterclaim (dkt. no. 22) is DISMISSED as moot because Worldspan has filed an amended counterclaim. Also, Manassas's Motion to Strike Worldspan's Supplemental Motion to Dismiss (dkt. no. 47) and Manassas's Motion to Strike Portions of Memo (dkt. no. 50) are DISMISSED as moot based on this order and the outcome of the hearing.